THE COUNTY COMMISSIONERS OF TALBOT COUNTY *vs.*
THE COUNTY COMMISSIONERS OF QUEEN ANNE'S
COUNTY.

*Constitutionality of the Acts of* 1874, *ch.* 276, *and* 1876, *ch.*
314, *relating to Kent Narrows—Construction of Section* 29
*of Article* 3 *of the Constitution of* 1867—*Powers of the
Legislature—How far Counties as Municipal Organizations
are under Control of the Legislature—When the State may
authorize Bridges over Navigable Streams—Rights of Navigation.*

The Act of 1874, ch. 276, is entitled: "An Act to repeal the Act
passed on the twenty-first of January, eighteen hundred and twenty,
chapter seventy, and the Act passed on the tenth of February,
eighteen hundred and twenty-one, chapter one hundred and twenty
eight, and the Act passed at the January Session, eighteen hundred
and seventy, chapter four hundred and sixty-four, relating to Kent
Narrows." The Act of 1876, ch. 314, is entitled: "An Act to repeal
the Act passed eighteen hundred and seventy-four, chapter two hundred and seventy-six, relating to Kent Narrows, and all preceding
Acts relating thereto, and to re-enact as follows." The Act of 1874,
after repealing preceding Acts, provided for levying a tax by the
County Commissioners of Queen Anne's and Talbot Counties, for the
purpose of erecting a drawbridge over Kent Narrows. The Act of
1876, after repealing the Act of 1874, and preceding Acts, provided
for levying a tax by the Commissioners of the two counties, for the
purpose of erecting and keeping in repair a drawbridge over Kent
Narrows and providing for a keeper of the draw of the bridge.
HELD:

That the titles of these Acts are sufficient to gratify the requirement
of sec. 29 of Art. 3 of the Constitution of 1867, which provides,
that "every law enacted by the General Assembly, shall embrace
but one subject, and that shall be described in its title."

A county is one of the public territorial divisions of the State, created
and organized for public political purposes connected with the ad-

246 MARYLAND REPORTS.

County Comm'rs of Talbot Co. *vs.* County Comm'rs of Queen Anne's Co.

ministration of the State Government, and specially charged with the superintendence and administration of the local affairs of the community; and being in its nature and objects a municipal organization, the Legislature may, unless restrained by the Constitution, or some one or other of those fundamental maxims of right and justice with respect to which all governments and society are supposed to be organized, exercise control over the county agencies, and require such public duties and functions to be performed by them, as fall within the general scope and objects of the municipal organization.

The Legislature can by mandatory Act require the County Commissioners of a county of this State to levy taxes on the public of the county generally, and incur debts and obligations for the construction and maintenance of a way or bridge located within the limits of another county, where the purpose of the taxation required is not only public, but the object to be accomplished is at the same time local in its character and of special and peculiar interest to the people sought to be taxed.

It would not be competent for a county to levy taxes to be expended in the construction of a road or bridge beyond its territorial limits without the express authority of law.

In the absence of any restrictive legislation on the subject by Congress, the State may authorize bridges over navigable streams, by statutes so guarded as to protect the substantial rights of navigation.

APPEAL from the Circuit Court for Talbot County.

This was an application by the County Commissioners of Queen Anne's County for a writ of *mandamus* against the County Commissioners of Talbot County to compel them to comply with the provisions of the Act of 1876, ch. 314, for the construction and maintenance of a drawbridge over the channel of Kent Narrows, a body of water within the limits of Queen Anne's County. The County Commissioners of Talbot County, in their answer to the petition of the County Commissioners of Queen Anne's County, assigned as reasons why the writ should not be issued, that the Act of 1876, ch. 314, and the Act of 1874, ch. 276, relating to the same subject and repealed by the Act of 1876, were unconstitutional and null and void.

County Comm'rs of Talbot Co. *vs.* County Comm'rs of Queen Anne's Co.

By agreement of the parties, a judgment *pro forma* for the petitioners was entered by the Circuit Court for Talbot County, and the respondents appealed.    The facts of the case are further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J., for the appellants, and submitted for the appellees.

*Philip F Thomas,* for the appellants.

The Act of Assembly of 1874, ch. 276, was valid and effectual for no other purpose than to repeal the laws previously enacted relating to Kent Narrows expressly described in its title and repealed by its first section, and each and all of its provisions from section two to section six, inclusive, are and were, from the date of its enactment, utterly null and void.   By section 29 of Article III, of the Constitution of Maryland it is, among other things, provided that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."   *Davis vs. The State,* 7 *Md.,* 160; *Keller, et al. vs. The State,* 11 *Md.,* 525; *Parkinson vs. The State,* 14 *Md.,* 184; *Mayor of Annapolis vs. The State,* 30 *Md.,* 112.

The Act of Assembly of 1876, ch. 314, is wholly and utterly void, being in contravention and violation of the 29th sec. of Art. III, of the Constitution hereinbefore quoted.

The three Acts preceding the Act of 1874, ch. 276, relating to Kent Narrows, had already been effectively repealed by the first section of that Act.   They were thus as completely obliterated from the records of the Legislature as if they had never been passed, and were to be treated, except for certain purposes not necessary to be here stated, as if they had never existed.   *Dashield vs. Mayor, &c. of Balto.,* 45 *Md.,* 615.

The case at bar in its facts bears no resemblance to the cases of *Davis vs. The State*, 7 *Md.*, 160; *Keller, et al. vs. The State*, 11 *Md.*, 525; *Parkinson vs. The State*, 14 *Md.*, 184; *Mayor of Annapolis vs. The State*, 30 *Md.*, 112; for it is clear, to use the language employed by the Court in the first named case, that, in each of them, the law "embraced but one subject and such other matters as were inseparably connected with it, and none other." Not so in this case. Here, the only valid Acts described in the title were the three which preceded the Act of 1874, and were repealed by its first section. They provided for the erection of a bridge over Kent Narrows as a purely local work, at the sole expense of Queen Anne's County, or of a joint stock company, while the body of the law of 1876 contains provisions for building and maintaining a bridge and causeway, the annual expense of a keeper, and other matters, at the joint expense of Queen Anne's and Talbot Counties, the money therefor to be raised by a tax on the property of each county. The erection of a bridge, exclusively located in Queen Anne's County, as a public highway, might well constitute the principal subject of a law for that purpose, and the expense of its erection and maintenance be treated as matter inseparably connected with it, and, therefore, unnecessary to be described in the title; but when one-half of the cost of erecting and maintaining such a bridge is saddled upon the people and property of a municipal corporation outside of whose limits it is located, the means of its erection and maintenance can no longer be considered as inseparable incidents, but become part and parcel of the principal subject of the law, and should be described in its title.

The General Assembly of Maryland has no power, by mandatory legislation, to compel a municipal corporation, against its own will and consent, to levy taxes, incur debts, or assume obligations for purposes not within the ordinary functions of municipal government, or for

objects wholly outside of, and beyond its territorial limits, whatever may be the local benefits to accrue therefrom, and therefore, the Acts in question are void. Municipal corporations are public bodies created by State authority and invested with the two-fold character of agencies in the administration of the State government, and of local governments, under their charters, for the benefit, exclusively, of their corporator, and though generally subject to legislative control, the power of the Legislature is neither absolute nor unlimited. *Cooley on Constitutional Limitations, top pages* 212 213, 230, 232 *and* 233, and authorities there cited, and fully considered in copious notes. *Pumphrey vs. Mayor, &c., of Baltimore,* 47 *Md.,* 151.

A State has no power to authorize any material obstructions to navigation to be placed in a navigable river or any of its tributaries, and the erection of a bridge over a navigable stream, under State authority, may be restrained by a Federal Court, where such bridge materially obstructs the navigation of the stream. *Devoe vs. Penrose Ferry Bridge Co.,* 3 *Am. L. R.,* 79; *Columbus Insurance Co. vs. Curtenius,* 6 *McL.,* 209; *Jolly vs. Terre Haute Bridge Co.,* 6 *McL.,* 237.

*A. R. Weedon,* for the appellees.

In cases of doubt on the question of power in the Legislature to pass a law, the Courts ought not to interfere and pronounce it unconstitutional; they cannot do so without assuming (where it does not clearly appear) that the Constitution has been violated. *Mayor, &c. of Balt. vs. Board of Police of Balt.,* 15 *Md.,* 376.

It is not necessary to insert in the title all the details provided for carrying the law into effect; the description of the subject in the Act, need only be a brief and concise statement, merely sufficient to indicate the nature of it. *Negro Ann Hammond vs. The State,* 14 *Md.,* 135.    And

a whole law, otherwise constitutional, would not be rendered void by the introduction of a single foreign or irrelevant subject not indicated in the title. In such case the irrelevant matter would be rejected as void, and the principal subject of the law, if properly described in the title, would be valid. *Davis vs. The State,* 7 *Md.,* 151; see also *Keller, et al. vs. The State,* 11 *Md.,* 525; *Miller and Kauffman vs. Barroll,* 14 *Md.,* 173; *Parkinson vs. The State,* 14 *Md.,* 184.

The Court of Appeals have decided in 15 *Md.,* 376, that the counties are public territorial divisions of the State, established for public political purposes connected with the administration of the government, possessing the character and endowed with the power of corporations according to the laws severally applicable to each. See also *State, use of Washington Co. vs. B. & O. Railroad Co.,* 12 *G. & J.,* 399; *Regents' Case,* 9 *G. & J.,* 365, 397 *and* 401; *Pumphrey vs. Mayor & C. C. of Balto.,* 47 *Md.* 147.

*John B. Brown,* on the same side.

The general subject of legislation in all these various enactments is the Kent Narrows; this is the subject, which is proposed to be operated on, so to speak. If the Kent Narrows is the subject, then it is described in the title to all their laws "*in totidem verbis.*" The enacting clauses or sections of the law are to deal with the manner and extent of the proposed legislation.

Anything we opine, which concerns the opening, deepening, widening and bridging the Narrows, so as to render them convenient for travel and commerce, would be covered by the mention of the subject in the title. The Kent Narrows being the subject of legislation, the members of the Legislature, at the mention of the word in the reading of the title, are to be wide awake as to what is proposed to be done to or with the Kent Narrows—whether they are to be obliterated altogether, or

enlarged, widened, bridged, improved and made a monument of legislative wisdom.

The opening of highways and constructing of bridges, is one of, or within the ordinary functions of municipal government.

In the face of the general power to open and lay down highways and construct bridges, the mandatory power of the Legislature, in the absence and against the consent and will of the municipality, to compel not only the building of a bridge, but the purchase of one, is recognized and established in the case of a municipal corporation like Baltimore City, whose existence as such is recognized in the Constitution of the State, and provision therein made for its government. *Pumphrey vs. Mayor and C. C. of Baltimore City,* 47 *Md.,* 150.

Tried by the principles laid down in that decision, there can be no question of the validity of these laws so far as Queen Anne's County is concerned, the bridge being within the territorial limits of that county. The question then is narrowed down as to the validity of these enactments in question in Talbot County. Had the Legislature the constitutional power to pass a law requiring the County Commissioners of Talbot County to levy a tax on the inhabitants or the taxable property of Talbot County, to raise a proportionate part of the amount necessary to remove the causeway over Kent Narrows, build a draw and bridge over the same, and also providing for the keeping of said draw and bridge in repair, and providing for the keeper of the draw of the same; it being conceded that the work is wholly outside the territorial limits of Talbot County, and wholly within those of Queen Anne's County? It may be proper here to give a brief history of the Narrows, and of the legislation had in reference thereto. The Kent Narrows was a shallow stream of water connecting the waters of Eastern Bay with those of Chester River, and separating two parts of Queen Anne's

County.   It became necessary, for the convenience of the trade and travel of the people of. Queen Anne's County, that the stream should be bridged.   A solid causeway, or wood, stone and dirt embankment was thrown across it by legislative authority, as far back as 1820 or 1821. Since that time it had been in use and answered all the purposes of the .local trade and travel of the people of Queen Anne's County, until the legislation contained in the Acts of 1874 and 1876, was inaugurated.   It is not generally supposed that the Narrows has ever been a navigable stream.   The man is not living who can testify to its ever having been a navigable stream.   If it ever had been navigable, at the time of the construction of the causeway across it, it had been from the operation of natural causes rendered unnavigable, or else the use of it was so little resorted to, and of so little moment to commerce and travel, that it was, without objection from any quarter, permitted to be closed under State authority.   It is fair to presume that the stream was not a navigable stream, or else that a causeway was built across it by consent of all the proper authorities.   *Washburn's Easements and Servitudes*, 481; *Wilson vs. Black Bird Creek*, 2 *Peters*, 250; *Flanagan vs. City of Phila.*, 42 *Penn.*, 231; *United States vs. New Bedford Bridge*, 11 *W. & Minot*, 407; *Colt vs. Smith*, 16 *Wis.*, 661.

It is a significant fact that the United States Government did not undertake the removal of the obstructions from the stream, and the cutting of a channel through the same, until the consent of the State of Maryland had been had and obtained in the provisions of the Act of 1874, and then acted strictly in accordance with the agencies of the State in the work of removal, &c.   So far as Queen Anne's County was concerned, there was no special local interest requiring the change from a causeway to a bridge with draw.   As appears by the Act of 1874, the object had in view was, that the United States might open

and deepen the Narrows for the purpose of local commerce and water travel of Talbot County, and perhaps some small section of Queen Anne's County, to and from the City of Baltimore. The main object was to shorten the distance between Talbot County and the City of Baltimore, for steamboats and sailing vessels, and avoid the long and often times dangerous voyage around the lower end, and up the western coast of Kent Island. Talbot County had, it was supposed, a much larger interest in the proposed change and improvement than Queen Anne's County could possibly have. The Acts in question were based chiefly, if not altogether, on the supposed interest of Talbot County. The Act of 1876, so expressly declares.

A special interest in the work in behalf of Talbot County and its people being apparent, the validity of the law is established beyond question, the Legislature is the judge of the *quantum* of interest, which should invoke its action. See *People vs. Lawrence,* 41 *New York,* 137 *to* 141, *pr. Mason, J.; Malchus vs. Highlands,* 4 *Bush,* 547 ; *Shelby & Co. vs. Railroad Co.,* 5 *Bush,* 225 ; *People vs. Hawes,* 34 *Barb.,* 69 ; *Litchfield vs. Vernon,* 41 *N. York,* 123 *to* 133. The only question is, did the Legislature act in making the enactments in question, from proper principles and motives? The presumption is, that it did. The special interest and wishes of Talbot County, were the controlling motives and principles of action throughout.

The acceptance by Talbot County Commissioners and the people of said county, without resistance or objection of the legislation of 1874, ch. 276, providing in its 6th section for additional levies for the building of a substantial bridge, if necessary, equally upon Talbot and Queen Anne's Counties, the embarkation in the work and contracting therefor conjointly with Queen Anne's County, committed Talbot County to the completion of the work, and all such legislation as might legitimately grow or spring out of the enterprise.

"In general, specific authority would be required to enable a municipality to expend money outside its territorial limits for a purpose which is not presumptively local." *Cooley on Taxation*, 123. See *Concord vs. Boscowen*, 17 *N. H.*, 465. See also *Cooley on Taxation.—Establishment of districts, diversity of districts, overlying districts, ch. V*, 110, *&c.*

What the Legislature may permit, it may compel a municipal corporation to perform. See *Kirby vs. Shaw*, 19 *Penn. St.*, 258; *Gordon vs. Comes*, 47 *New York*, 608; *Thomas vs. Leland*, 24 *Wend.*, 67; *Pumphrey vs. Mayor & C. C. of Balt. City*, 47 *Md.*, 152; *State, use of W. County vs. B. and O. R. R. Co.*, 12 *G. & J.*, 436; *Constitution of Md.*, 1867, *Article VII, sec.* 1; *Cooley on Constitutional Limitations, title Townships and Counties, chapter VIII*, 240; *Graff vs. Mayor, &c., of Frederick City*, 44 *Md.*, 67.

*Thos. J. & B. P. Keating*, on the same side.

Acts of the Legislature are presumed to be constitutional—are not to be pronounced unconstitutional when a well founded doubt exists—only in cases of a manifest infringement of a constitutional provision or gross violation of the rights of the people, are they to be declared void by the Courts. *Harrison, et al. vs. State, use of Harrison*, 22 *Md.*, 468; *Davis, et al., Lessee vs. Helbig*, 27 *Md.*, 452.

Taxes can be imposed for public purposes, and local tax for local interests; and the right to determine whether the purposes of the tax are public or the interest local, is primarily a legislative right, not to be controlled by the Courts, except under and by virtue of some constitutional restriction. *Cooley on Taxation, ch. IV*, 67; *Burroughs on Taxation, page* 6, *par.* 12.

The Courts should support this right in the Legislature, unless clearly satisfied that an error has been committed. *Cooley,* 69.

County Comm'rs of Talbot Co. *vs.* County Comm'rs of Queen Anne's Co.

The right of the Legislature to impose a local or district tax does not depend upon the expenditure of the tax within the district, or upon the *situs* of the public work within the district, but upon some benefit to be derived by the people of the locality, or some local interest in the work, not common to all the people of the State. *Cooley* 123, 419; *Burroughs, page* 22, *ch.* 3, *par.* 26; *Burroughs, page* 38, *par.* 39; *Cooley,* 68 *and* 69.

If the consent of the people of Talbot County to the tax, and their special interest in the bridge, are matters for controversy in this suit, they are set forth as facts in the Act of 1876, ch. 314, and there is no evidence or proof to the contrary.

The Acts of 1874, ch. 276, and of 1876, ch. 314, are not in violation and contravention of the Constitution, Art. 3, sec. 29.

Even the letter of this constitutional provision seems to have been complied with, though perhaps unintentionally, by the Legislature. These Acts, taken either separately or collectively, embrace but one subject, and that subject is described in the title to each as Kent Narrows.

ALVEY, J., delivered the opinion of the Court.

Whether the Acts of 1874, ch. 276, and 1876, ch. 314, are obnoxious to the objection taken to them, that their titles are insufficient to gratify the requirement of Art. 3, sec. 29, of the Constitution of the State, is a question supposed, by a majority of the Court, to be settled in the negative by the recent case of *The County Commissioners of Dorchester County vs. Meekins, ante p.* 28.

But in the opinion entertained by the majority I do not concur. In my judgment, both the Act of 1874 and of 1876 are fatally deficient in their titles, and for that reason the Acts should be declared nugatory. But as that is not the opinion of a majority of the Court, we are required to proceed to the consideration of the next constitutional objection taken to those Acts by the appellants.

These Acts were passed to provide for the construction and maintenance of a drawbridge over the channel of Kent Narrows, a body of water within the limits of Queen Anne's County. And before taking special notice of the provisions of the Acts, it may be proper to observe the relation that those Narrows bear to Talbot County, the present appellant.

These Narrows connect the waters of Eastern bay with those of Chester river, and they divide Kent Island from the mainland,—the Island as well as the Narrows being exclusively within the limits of Queen Anne's County. Whether these Narrows were ever navigable before being made so by the general government, under the authority of the Act of 1874, ch. 276, does not appear. But under previous legislation of the State, the authorities of Queen Anne's County had made and maintained a permanent and continuous causeway over the Narrows, connecting the Island with the mainland; and this causeway served all the purposes of communication and travel between the Island and the other portions of Queen Anne's County. Within a few years past the idea was conceived of cleaning out and making these Narrows navigable, and in order to effect that object it was necessary to construct a drawbridge in the existing causeway. This new or contemplated route of communication would seem to have been principally designed for the benefit of the people in the north and north-western portions of Talbot County, bordering on Eastern bay and Wye river, to save them the time and distance of rounding the lower extremity of Kent Island, in their communication by water with Chester river, Baltimore City, and other places on the upper portion of the Chesapeake bay. Hence we find it recited in the Act of 1876, ch. 314, that the erection of the bridge was at the special instance and request of Talbot County, and that the benefits thereof would inure chiefly to the citizens of that county.

The bridge was first provided for, at county expense, by the Act of 1874, ch. 276. By that Act several previous Acts in relation to the Narrows were repealed, and, by the 2nd section, it was provided that the County Commissioners of Queen Anne's County and Talbot County should levy a tax upon the taxable property of their respective counties, for the purpose of erecting a drawbridge over Kent Narrows, the one-half of the cost of erection to be borne by each county respectively. By the 3rd section it was provided that the bridge should be a free bridge, and should be under the control of the County Commissioners of Queen Anne's County. And by the 4th section, authority was given to the government of the United States to open and clean out the said Narrows, and to remove all obstructions therefrom.

Under this Act, the general government was induced to make appropriation for and have the channel of the Narrows cleaned out and deepened. The County Commissioners of the two counties entered into a contract for the construction of the bridge, and levied the money and paid the contractor for his work, as far as he progressed with it. But the contractor did not complete the work, and left it in an insecure condition, and as a consequence it was washed out and greatly broken by the strong current of water running through the new made channel. This being the condition of the work, it became necessary either to repair the damage and complete the bridge, or restore the original causeway; but as the Act of 1874 made no provision for keeping the bridge in repair and safe for public travel, or for a keeper of the draw in the bridge, that Act was repealed and the Act of 1876, ch. 314, enacted in its stead. By this latter Act, after recitals in the preamble, it is enacted that the County Commissioners of the two counties shall levy a tax upon the assessable property of their respective counties, "for the purpose of erecting and keeping in repair a drawbridge

258          MARYLAND REPORTS.

County Comm'rs of Talbot Co. *vs.* County Comm'rs of Queen Anne's Co.

over said Kent Narrows, and providing for a keeper for the draw of the said bridge;" each county to provide and pay one-half the expense. It is then provided that the bridge shall be free, and shall be under the joint control of the Commissioners of the two counties. And, finally, it is declared that all Acts done, and all contracts made and entered into, by the Commissioners of the two counties, acting under the Act of 1874, shall stand ratified and confirmed as if that Act had not been repealed. Under the Act of 1876 the Commissioners of Queen Anne's County proceeded with the work, but the Commissioners of Talbot County have refused all further co-operation in the matter, and have refused to make any levy of taxes for the purpose of aiding in the rebuilding and keeping in repair the bridge, and deny the power of the Legislature to impose upon them the duty of so doing; and hence the application by the Commissioners of Queen Anne's County for a mandamus against the Commissioners of Talbot County to compel them to comply with the provisions of the Act of 1876, ch. 314.

To state the position of the Commissioners of Talbot County, in regard to the demand now made upon them, they contend that the Legislature has no power, by mandatory Act, to compel a municipal corporation, against its own will and consent, to levy taxes, incur debts, or assume obligations for purposes not within the ordinary functions of municipal government, or for objects wholly outside of, and beyond its territorial limits, whatever may be the local benefits to accrue therefrom; and that, therefore, the Acts in question are void.

Now, if it were true, as contended by the appellants, that the Acts in question did attempt to impose upon the Commissioners of Talbot County the duty of levying taxes and assuming obligations for purposes not within the ordinary functions of municipal government, such as that of a county organization, the correctness of the position taken

OCTOBER TERM, 1878.        · 259

·County Comm'rs of Talbot Co. *vs.* County Comm'rs of Queen Anne's Co.

by the appellants could not be controverted.   But within the county limits the making and maintaining the public highways and bridges, at the cost of the county, are among the most ordinary functions with which the county organization, as a municipality, is charged.   This being .so, the question is reduced to this: Can the Legislature, by mandatory Act, require the County Commissioners to levy taxes on the people of the county generally, and incur debts and obligations, for the construction and mainten- ance of a way or bridge located within the limits of another county?   If this question cannot be answered in the affirmative, under the peculiar circumstances of this case, the writ of mandamus must be refused.

A county is one of the public territorial divisions of the ·State, created and organized for public political purposes, connected with the administration of the State government, .and especially charged with the superintendence and admin- istration of the local affairs of the community; and being in its nature and object a municipal organization, the Legislature may, unless restrained by the Constitution, .or some one or more of those fundamental maxims of right .and justice with respect to which all governments and .society are supposed to be organized, exercise control over the county agencies, and require such public duties and functions to be performed by them, as fall within the gen- eral scope and objects of the municipal organization.   It is true, the power of the Legislature over these municipal ·organizations is not without limit, under the Constitution of this State, and especially is there a limit in regard to ·objects dependent upon the exercise of the power of taxa- tion.   This limitation is implied from the very nature and ·objects of the organization.   As applied to these subdivi- .sions of the State, the Legislature has no more power to require a tax to be raised in one county to pay for a purely local object in and for another county than it has to re- ·quire that the expense of a purely public improvement

should be paid by one or a given number of individuals. As was said by Chief Justice BLACK, in delivering the opinion of the Court in the case of *Sharpless vs. City of Philadelphia*, 21 *Penn. St.*, 168, "The whole of the public burden cannot be thrown on a single individual under pretence of taxing him, nor can one county be taxed to pay the debts of another, nor one portion of the State to pay the debts of the whole State. These things are not excepted from the powers of the Legislature, because they did not pass to the Assembly by the general grant of legislative power. A prohibition was not necessary. An Act of Assembly commanding or authorizing them to be done, would not be a law, but an attempt to pronounce judicial sentence, order or decree." Indeed, it would be a startling proposition to announce, that it is competent to the Legislature to require the people of one county to raise money by taxation and apply it to the making of roads, bridges, or any other public improvement, in another county, without reference to any special benefit to be derived therefrom by the people thus taxed. Such legislation could not for a moment be sustained; and it is fully conceded by the counsel for the appellees that such legislation would be unconstitutional and void.

But, notwithstanding this restriction upon the powers of the Legislature, it does not follow that where, as in the case before us, the purpose of the taxation required is not only public, but the object to be accomplished is at the same time local in its character, and of special and peculiar interest to the people sought to be taxed, that the law directing the tax to be levied may not be enforced, though the object of the expenditure may have its *situs* beyond the limits of the county taxed. Here, Talbot County promoted and embarked in the work with Queen Anne's County, and induced the latter county to assume obligations that she never would have assumed, in all probability, but for the active agency of Talbot County in under-

taking the work, and her willingness in the beginning to share the expense. All this was under the sanction of law; and the statute itself recites and declares that the erection of the bridge was undertaken at the special instance of Talbot County, and that the benefits to accrue therefrom will inure chiefly to the people of that county. It follows, therefore, that the bridge is a public local improvement, such as may be supported by local taxation, and, under the circumstances of the case, it is but just and equitable that Talbot County should be required to bear her proportion of the expense, in accordance with the Act of Assembly. It would be most unjust to require the whole expense of the work, and of keeping it in repair, to be borne by Queen Anne's County; and the fact that the bridge has its *situs* in the latter county is no answer to the present application. While it would not have been competent to the county to levy taxes to be expended in the construction of a road or bridge beyond its territorial limits, without the express authority of law, the bridge in question was not only authorized, but its construction and the levy of taxes to pay for it, were expressly directed by mandatory Act of the Legislature; and though the bridge is over a stream beyond the limits of the county, the authorities are quite explicit in maintaining, upon the ground of special and peculiar interest, that such mandatory legislation is constitutional and enforceable. *Thomas vs. Leland and others,* 24 *Wend.,* 65; *Com. vs. Newburyport,* 103 *Mass.,* 129; *Carter vs. The Bridge Proprietors,* 104 *Mass.,* 236; *Cooley on Taxation,* 123.

As to the position of the appellants that the State has no power to authorize or require the erection of a bridge over a navigable river or stream that may in any manner interfere with the navigation thereof, it is only necessary to remark, that it is now settled by repeated decisions of the Supreme Court of the United States, that, in the absence of any restrictive legislation on the subject by Con-

gress, the State may authorize bridges over navigable streams, by statute so guarded as to protect the substantial rights of navigation. *Wilson vs. The Blackbird Creek Marsh Co.,* 2 *Pet.,* 250; *Gilman vs. Philadelphia,* 3 *Wall.,* 713; *Atlee vs. Packet Co.,* 21 *Wall.,* 389; *Pound vs. Turck,* 95 *U. S.,* 459. Here, it is not shown, nor is there any pretence, that the drawbridge authorized to be constructed will, in any substantial way, interfere with the rights of navigation. On the contrary, drawbridges are structures that exist over many of the navigable streams of the country, without interference with or complaint from those interested in navigation.

There is one matter of charge allowed in the order appealed from, which we think cannot be allowed, and that is for keeping up a ferry during the time of the construction of the bridge. This does not seem to be provided for by the Acts of Assembly, and hence it is improper to be included in the amount directed to be levied. The order appealed from, therefore, must be reversed, and the cause be remanded that a corrected order be passed in accordance with this opinion.

> *Order reversed, with costs in this*
> *Court to the appellants,*
> *and cause remanded.*

(Decided 28th January, 1879.)