This is an appeal from a ruling of the Court upon a demurrer to a petition filed by the appellants for a writ of mandamus to require the appellees to levy upon the assessable property of Talbot County a certain sum of money to be used and expended in repairs to a certain bridge over Kent Narrows, within the limits of Queen Anne's County. *Page 15 
By the Act of 1874, ch. 276, the County Commissioners of Queen Anne's County and of Talbot County were directed to levy a tax upon the taxable property of their respective counties for the purpose of erecting a draw-bridge over Kent Narrows. This Act was repealed and re-enacted by the Act of 1876, ch. 314, by which, in addition to directing the Commissioners of the two counties to levy for the erection of the bridge, (as contained in the Act of 1874), also provided for levy of money on the taxable property of each county, to be used in the repairs of the approaches thereto within the distance of one hundred yards, not to exceed the yearly sum of $300 for each county. This Act came before this Court for its consideration in the case of Co. Commrs. of TalbotCo. v. Co. Commrs. of Queen Anne's Co., 50 Md. 256. From the opinion of the Court in that case it appears that Kent Narrows connect the waters of Eastern Bay with those of Chester River, and divide Kent Island from the mainland. The narrows, as well as the land bordering thereon, are exclusively within the limits of Queen Anne's County. The island was reached at one time from the mainland over a causeway; but subsequently, with the view of making the narrows navigable it was contemplated to cut the causeway, and erect a draw-bridge so that vessels and steamers would have a short cut from the waters in the north and northwestern portions of Talbot County into Eastern Bay; and therefore it was recited in the Act of 1876, ch. 314, that the erection of the draw-bridge was at the special instance of Talbot County, and that the benefits thereof would enure chiefly to the citizens of that county. It was also held in that case that though the Legislature has no power "to require a tax to be raised in one county to pay for a purely local object in and for another county," and "while it would not have been competent to the county to levy taxes to be expended beyond its territorial limits, without express authority of law," yet it was within the legislative power, "when the purpose of the taxation required is not only public but the object to be accomplished is at the same time local in its character, and of *Page 16 
special and peculiar interest to the people sought to be taxed," to direct a tax to be levied, "though the object of the expenditure may have its situs beyond the limits of the county taxed." The Act was therefore pronounced to be liable to no constitutional objection and therefore valid.
By virtue of the authority conferred by this Act a draw-bridge was erected over Kent Narrows in the year 1876, at the joint expense of the two counties, and was maintained as a free bridge at their joint expense for six or ten years. It is alleged in the fifth and sixth paragraphs of the petition that about 1887 this bridge, "by decay, the action of weather, and of a swift current of a large body of water, became dilapidated, unstable and unsafe, and dangerous to public travel, despite the care and attention thereto, and the money expended thereon to keep the same in repair, to such an extent as to require rebuilding of the same;" and a new draw-bridge was built over the narrows, not on the old site, but a short distance north of the site of the old bridge; that the appellees, "after the new bridge was built, refused to contribute and pay any money towards the cost of its erection" or contribute in anywise towards its maintenance, or repair and make safe and convenient for travel, the old, so that the whole burden of erecting the new bridge, and maintaining a safe means of travel between the island and the mainland has since fallen upon and been borne by the appellants. In the ninth paragraph it is alleged that the new bridge has now become so dilapidated and unsafe that a practically new bridge must be built at an estimated cost of not less that $5,000. It is also alleged that the public convenience requires that "a bridge"
shall be repaired and made safe for travel, and that the appellants desire to do so, and have requested the appellees to contribute for that purpose, but they refuse to levy and expend any money for such repairs. The petitioner set out in its petition the amounts it has expended in maintaining the new bridge, amounting in the aggregate to over $5,000; and pray for amandamus requiring the appellees to levy one-half thereof on the assessable property of Talbot, as its share of *Page 17 
such expenses, to the order of the appellants to be used in repairs "to the bridge aforesaid."
The respondent answered the petition, admitting the facts as stated, but denying among other things its legal obligation to contribute to the cost of the maintenance of the new bridge, because of the fact that the new bridge was constructed by the appellants without the consent of the appellees and was not authorized by the terms of the Act of 1876, ch. 314; and furthermore, that the said Act has been repealed by the Act of 1902, ch. 300. To this answer the petitioner filed several pleas; these were demurred to, so that the sufficiency of the petition comes in question and must now be determined.
In 1902, by ch. 300, the Legislature repealed the Act of 1876, and by the first section of the repealing Act prohibited the County Commissioners of Talbot County from expending money upon the construction or repairs of any highway or bridge not in whole or in part on land within the limits of Talbot County. If this Act is valid and operative there can be no question that themandamus was properly refused for the reason that without the authority conferred by the Act of 1876, ch. 314, the County Commissioners of Talbot County have no power to levy a tax to be expended upon a draw-bridge wholly within the limits of Queen Anne's County. County Commrs. of Talbot Co. v. Co. Commrs.Queen Anne's Co., 50 Md. 259.
It is insisted by the appellants that the Act of 1902 offends the provisions of the 29th section of the 3rd Article of the Constitution of Maryland, and is therefore void.
The terms of this constitutional provision are as follows, "every law enacted by the General Assembly of Maryland shall embrace but one subject, and that shall be described in its title." It has been applied in many cases that have come before this Court and its object and scope have more than once been stated.
The leading case, to which many of the subsequent cases have made reference, is that of Davis v. State, 7 Md. 160. The objects of the provision are there stated to be to prevent *Page 18 
first, the engrafting upon subjects of great public benefit and importance, for local and selfish purposes, foreign and pernicious matters, and second, the stealthy incorporation into a law of foreign matter, whereby, it has not infrequently happened," that the statute books have shown the existence of enactments that few of the members of the Legislature knew anything of before. In M. C.C. of Balto. v. Reitz,50 Md. 574, the Court said that "while the title must indicate the subject of the Act it need not give an abstract of its contents nor need it mention the means and method by which its general purposes is to be accomplished." In Stiefel v. Md. Institute,61 Md. 147, the one and the only thing in the title of the Act, was the repeal of another Act, and yet by its second section affirmative legislation was attempted; it was held, that such an attempt was in violation of this provision, because the title did not disclose that a new law, in lieu of the old was to be enacted. The real objection to the Act was thus stated by the Court, that "affirmative legislation was attempted under a title which disclosed absolutely nothing except the repeal of a former Act." The sum and substance of all the numerous cases in Maryland were stated in Drenen v. Banks, 80 Md. 316, as follows: "If the several sections of the law refer to, and are germane to the same subject-matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. While the title must indicate the subject of the Act, it need not give an abstract of its contents, nor need it mention the means and method by which the general purpose is to be accomplished." It has been held also, that the constitutional requirement was not complied with in a case where from the title the repeal of a former Act was the sole object, new and affirmative legislation could not be enacted as stated above. Stiefel case, supra;State v. Benzinger, 83 Md. 488; also where the title being "to regulate" only a provision to "abolish" liquor traffic, was within the prohibition of the constitutional requirement.Whitman v. State, 80 Md. 416.
In Luman v. Hitchens Bros. Co., 90 Md. 23, an enactment *Page 19 
prohibiting railroad and mining corporations, their officers and agents from selling to any person goods, wares, and merchandise, was held not to be germane to the description in the title, that the Act was to prohibit such corporations and their officers from selling to their employees. It was there said that "though the title need not contain an abstract of the bill, nor give in detail the provisions of the Act, it must not be misleading by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass, nor must there be cloaked in the enactment any foreign, discordant or irrelevant matter not disclosed in the title."
While it thus appears that this Court has been careful to maintain this provision of the Constitution, so as to conserve to the fullest extent the objects that were intended to be protected thereby, it has been equally careful not to destroy by a too narrow construction important enactments, made with a wise purpose of effecting valuable and important results. M. C.C.of Annapolis v. State, 30 Md. 119. JUDGE ALVEY speaking for himself and his associates in State v. Norris, 70 Md. 96, said "this Court has ever been reluctant to defeat the will of the Legislature by declaring such legislation void, if by any construction it could possibly be maintained." In that case an enactment preventing the taking and carrying away of sand from the bed of the Potomac River, was held to be germane to a title to add a new section to the Code, title Crimes and Punishments, sub-title Rivers. See also Commrs. of Dorchester Co. v.Meekins, 50 Md. 28, and Commrs. of Talbot Co. v. Commrs. ofQueen Anne's Co., id. 245.
In the former case where the title of the Act was to repeal certain sections of the Code * * * and all other sections and Acts inconsistent, c., and "to enact the following in lieu thereof;" legislation involving the redistricting of a county, the appointment of Tax Collectors and Treasurer, c., was held to be germane to the title and not obnoxious to the provisions of this clause in the Constitution. The Court said, "any member of the Legislature, upon reading the title would be informed that "the County Commissioners their powers and *Page 20 
duties formed the subject to be dealt with by the Act." Many more such cases could be cited, but we think those we have referred to are sufficient to clearly lay down the rules that should be applied here.
The title of the Act now under consideration, is "An Act to limit and control the expenditure of money upon public highways by the County Commissioners of Talbot County." The subject of the proposed enactment, as described in the title is very broad; it is "to limit and control expenditures upon public highways." There is no reference specially to the highways within the county, but the words are sufficiently extensive to include, allhighways wherever situate, over which the Commissioners of Talbot County had the power to control. It must be noted also that the subject as expressed in the title is not to regulate such expenditures, but to "limit and control" them. By the very terms of this title, the object of the Act was to limit or take from and control of the County Commissioners of Talbot County a part of their power to expend the county's money on public highways. The object of the Act was expressed in the title, therefore, does not raise any question of the difference between "regulation" and "abolition;" such as arose in Whitman's case,80 Md. 417, where the title was to regulate, and the enactment was to abolish. The only question raised here is whether the prohibition contained in the body of the Act whereby the County Commissioners are prohibited from levying taxes on the assessable property of Talbot County, for the purpose of constructing, maintaining and repairing any highway, bridge or public road, not in whole or in part within the county, is germane to the subject of "limiting and controlling" expenditures "upon public highways." There would seem to be no doubt of this. By the Act of 1876, ch. 314, the Commissioners of Talbot County had been given power to levy upon the property of the county, for money to be spent on the bridge and highway over Kent Narrows, which are wholly without the limits of the county. The operation and effect of the Act of 1902, was to withdraw that power from them, so that thereafter no *Page 21 
money could be raised from the property of Talbot except for roads and bridges wholly within the county. There can be no question therefore that the Act embraced but one subject, and that was described in its title, and it is therefore not obnoxious to this provision of the Constitution.
It is also contended that this Act is inoperative to affect the claim of the appellant; because by the Act of 1876, ch. 314, it acquired a contractural right to require the appellee to contribute towards the maintenance of the bridge of 1876. But we cannot agree to this position. The counties of the State are merely political agencies, created for the better government of the affairs of the State, and as such are constantly subject to legislative control. It seems to be clear that the object of the Act of 1876, ch. 314, was to promote the public interests. As against the State itself, it conferred no vested right of any kind. Whatever powers it conferred upon Talbot County, having been so conferred for the public good, could at the legislative will, at any time, be altered, changed or entirely abolished.Mayor, c., v. Groshon, 30 Md. 444.
Having decided that the Act of 1902, ch. 300, was a valid exercise of legislative power, we might here conclude this opinion. But apart from the considerations already stated, it is clear that the appellees have no right to the remedy asked for by the petition.
It is clear from the whole Act that the Act of 1876, ch. 314, authorized the County Commissioners of Talbot County to levy for the construction of only one bridge across Kent Narrows. It was contemplated that after it had been once constructed, it could be forever maintained by such repairs, as were provided for in the second section of the Act. By that section, the two counties were severally, to raise by taxation, annually, such sums as were necessary to keep it in good repair; but each county was limited for that purpose to the yearly sum of $300. The amount to be spent on construction is also limited by the fourth section of the Act. There is no provision to be found in any other Act authorizing the appellees to levy any additional sums for "construction" purposes. So that the *Page 22 
whole authority was to levy on Talbot County for construction
purposes, one-half of six thousand dollars by sec. 4; and $300 annually, for repairs, and for a keeper of the draw by sec. 3. It is not shown in the record how much of the $6,000 was expended in the construction of the original bridge, but if in its present condition it requires not less than $5,000 to restore it, it may safely be assumed that but a very small part of the amount, if any, of the amount allowed by the Act for construction, now remains unexpended. And if this be correct, there is no authority for the Commissioners of Talbot County to levy the $5,000 that are now needed. The condition of the original bridge is now such that it may be regarded as no longer existing. Part of the abutments and of the pivot still remain, doubtless in a more or less damaged state. Its condition as far back as 1887 was such that (as the petitioner alleges) it then required "rebuilding;" and it was found cheaper to build a new bridge on another site at a cost of $4,200. The annual amounts allowed by the Act for the repairs, as well as those that now remain unexpended of the money allowed for such repairs are totally insufficient to rebuild the old bridge at a cost estimated to be less than $5,000, and there is no authority in the Act or elsewhere for the Talbot County Commissioners to levy any additional sum for construction. So that conceding that the Act of 1876 to be still in force there is no legal authority for the Commissioners of that county to raise by taxation any sums for the restoration of the old bridge.
With reference to the claim of the appellants to be reimbursed by the appellees in part for the expenses of maintaining the new bridge and furnishing a keeper thereof, there is clearly no authority to be found in the Act of 1876. As we have said that Act has reference only to the original bridge, and inasmuch as that has not been maintained and no expenses incurred in respect thereto, there can be now no demand made upon the appellees for any sums that the appellants may have spent.
There were other questions argued by the counsel, but inasmuch *Page 23 
as what we have said disposes of the case we need not consider them here.
Order affirmed with costs to the appellees.
(Decided February 25th, 1904.)