R. CHARLES AVARA ET AL. v. THE BALTIMORE
NEWS AMERICAN DIVISION, THE HEARST
CORPORATION

[No. 85, September Term, 1981.]

*Decided January 26, 1982.*

544

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Stephen H. Sachs, Attorney General,* with whom were *Robert A. Zarnoch* and *Linda H. Lamone, Assistant Attorneys General,* on the brief, for appellants.

*Theodore Sherbow,* with whom were *Stephen M. Hearne* and *Sherbow, Shea & Tatelbaum, P.A.* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The primary issue in this case is whether a Conference Committee of the Maryland General Assembly appointed to resolve differences between the two Houses arising over enactment of the Fiscal Year 1982 Budget Bill (H.B. 620) violated the provisions of Maryland Code (1957, 1980 Repl.

Vol.), Article 76A, §§ 7-15 (the Act), by excluding the public from its working sessions.

(1)

The Act requires that meetings of public bodies, with some exceptions, be open to the public. In § 7, the General Assembly declared:

> "It is essential to the maintenance of a democratic society that except in special and appropriate circumstances public business be performed in an open and public manner and that the citizens be advised of and a⋅ ̦are of the performance of public officials and the deliberations and decisions that go into the making of public policy."

Section 9 provides that the Act applies to a "public body when it is exercising legislative, quasi-legislative or advisory functions." Section 8 (g) defines a " 'Public body' " as "an entity consisting of two or more persons that is created by the State Constitution, by State statute, local charter or ordinance, or rule, resolution or bylaw, or by executive order of the Governor or the chief executive authority of a political subdivision of the State." Section 8 (f) defines a " 'Meeting' " to mean "the convening of a quorum of the constituent membership of a public body for the purpose of considering or transacting public business."

Section 10 requires that meetings of every public body covered by the Act "shall be open to the public unless closed in accordance with § 11." Section 11 authorizes meetings to be closed for any of thirteen specified reasons, one of which (§ 11 (a) (13)) permits a meeting to be closed on an individually recorded affirmative vote of two-thirds of the members present, for an "exceptional reason so compelling as to override the general public policy in favor of open meetings." Section 11 (b) (2) requires:

> "A statement of the time, place, and purpose of any closed meeting, the record of the vote of each

> member by which any meeting was closed, and the authority under this section for closing any meeting shall be included in the minutes of the next public meeting or public session of the public body."

Section 12 (a) requires that public bodies give reasonable advance notice of open meetings. Section 14 entitled "Enforcement of subtitle" authorizes the filing of civil actions by a person "adversely affected by an action in violation of §§ 10 or 12 . . . for the purpose of requiring compliance with the provisions of these sections, determining the applicability of these sections, or voiding the action." Section 14 (e) (1) authorizes the court "to issue an injunction, to determine the applicability of this subtitle to the discussions or decisions of public bodies, or to grant such other relief as may be appropriate." Section 14 (e) (2) authorizes the court to "declare void any final action taken at a meeting held in wilful violation of §§ 10 or 12 . . . [if it] finds that no other remedy would be adequate under the circumstances." Subsection 14 (g) declares: "This section does not apply to an action appropriating public funds, levying taxes, or providing for the issuance of bonds, notes or other evidences of public obligation." Section 14 (h) recites that the provisions of § 14 "do not affect or preclude the application of any other available remedies."

### (2)

House and Senate Rules 60 and 61, which are identical in substance, authorize the appointment of conference committees where the two Houses "are unable to concur on the final form of a Bill." The rules provide that the report of the committee may not be amended and if the report recommends passage of the bill in any form, the bill shall be submitted to a vote of each House.

On April 2, 1981, a House-Senate Conference Committee on the Budget Bill, consisting of three members of each House, was appointed to make recommendations involving a number of items in the Budget Bill concerning which the two

Houses were not in agreement. The Committee met on April 2, 3 and 6 in closed session. On each occasion, the members unanimously voted to exclude the public and press from attending the meeting and observing the Committee's deliberations. On April 6, 1981, the report of the Conference Committee was submitted to the General Assembly and the Budget Bill was enacted on the same day.

The *Baltimore News American,* a daily and Sunday newspaper, filed a bill of complaint in the Circuit Court for Anne Arundel County, seeking a declaratory judgment that the Budget Conference Committee, and all other Conference Committees of the General Assembly, were public bodies whose meetings were required to be open to the public. The case was tried on a stipulation of facts between the parties. It was thereby agreed that on April 2, 1981, after the Committee voted to exclude the press and the public from its meetings, Senator Laurence Levitan, one of the conferees, gave as "compelling reasons" justifying closure "the uniqueness and importance of the budget and the budget bill and the necessity to preserve free and open discussion concerning resolution of the conflicts between the two Houses." It was also stipulated that the constitutional deadline for enacting the Budget Bill was 12 midnight, April 6, 1981; that the Conference Committee concluded its business and submitted its report at 12 noon on that day; and that the House and Senate adopted the recommendations of the Committee and approved the Budget Bill, respectively, at 3:30 p.m. and 4:30 p.m. on April 6. The parties further stipulated that in 1976 and 1977 the General Assembly failed to enact the Budget Bill by the constitutional deadline, necessitating a proclamation by the Governor extending the time of the regular session. Additionally, it was stipulated that in every legislative session since 1976 a House-Senate Conference Committee had been appointed to resolve differences between the two Houses in the budget and that it was likely that a similar Conference Committee would be appointed in 1982.

The court (Hopper, J.) stated that "The central and only substantive issue raised by the pleadings ... [was whether]

the Budget Conference Committee of the General Assembly [was] required by Article 76A of the Maryland Code to meet in open session at which the public may attend." After reviewing the provisions of the Act, and the public policy reasons underlying its passage as set forth in § 7, the court held that the Committee was a "public body" exercising an "advisory function" within the contemplation of the Act's provisions.[1] The court recognized that under § 11 (a) (13) a meeting could be closed for an "exceptional reason so compelling as to override the general public policy in favor of open meetings." It held, however, that that provision was required by § 14 (i) to be strictly construed,[2] and that the reason given by Senator Levitan for closing the meeting was not so compelling as to override the general public policy in favor of open meetings. The court said:

> "[T]he very reason for open meetings is so that the citizens (public) be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy .... [T]he very reason given for closing the meeting was itself to avoid precisely what the Public Policy set forth in Section 7 of Article 76A sought to accomplish. The importance of the Budget and its effect on the public is self-evident, and this Court is persuaded that any fair and reasonable construction of Section 11 (a) (13) would preclude the Committee from closing the meeting to avoid or

---

**1.** Section 8 (b) defines " 'Advisory function' " to mean

"the study, evaluation, or the making of recommendations on matters of public concern pursuant to an official delegation of responsibility in the form of a constitutional or charter provision, law, statute, resolution, ordinance, order, rule, regulation, or other formal action by or on behalf of a public body which exercises legislative, quasi-legislative, executive, judicial or quasi-judicial functions, or by the Governor or the chief executive of a political subdivision of the State."

**2.** Section 14 (i) provides:

"In an action under this subtitle involving the application of § 11 (a) (13) of this subtitle, the court shall strictly construe the provisions of § 11 (a) (13)."

circumvent the very thing that it sought to accom-
plish by its public policy in Section 7. How can the
reasons furnished by the Committee be so com-
pelling as to override the public policy when the
public is entitled to be present to observe the per-
formance of public officials, and the deliberations
and decisions that go into the making of public pol-
icy. Section 11 (a) (13) cannot be so construed as to
encompass an evasion or circumvention of Section
7. It must be for reasons that override Section 7."

The court found no merit in the argument that § 14 (g)
deprived it of authority to enforce the Act because the Com-
mittee was engaged in "an action appropriating public
funds." The court said that the Conference Committee per-
formed only a "conciliatory advisory function" and its action
was not, therefore, one appropriating public funds within
the contemplation of § 14 (g). Even if it was such an action,
the court said it nevertheless had jurisdiction under the
Maryland Uniform Declaratory Judgments Act, Code (1980
Repl. Vol.), §§ 3-401 to 3-415 of the Courts and Judicial
Proceedings Article to determine the applicability of the
Act's provisions to the Conference Committee's actions. The
court also held that the Speech and Debate clauses of Article
10 of the Maryland Declaration of Rights,[3] and Article III,
§ 18 of the Maryland Constitution,[4] did not operate as a bar
to the plaintiff's action, as claimed by the Attorney General.
The court said that the plaintiff sought only a declaration of
rights under Article 76A "and in no way whatever seeks to
impeach any proceedings, or impose liability on any Defen-
dant, either civil or criminal" in violation of the Maryland
Constitution or Declaration of Rights. Finally, the Court
held that the General Assembly, by enacting Article 76A,
§§ 7-15, had abrogated its historical practice and custom of
permitting the Budget Conference Committee to meet in

---

**3.** Article 10 declares: "That freedom of speech and debate, or proceedings
in the Legislature, ought not to be impeached in any Court of Judicature."
**4.** Article III, § 18 states: "No Senator or Delegate shall be liable in any
civil action, or criminal prosecution, whatever, for words spoken in debate."

closed session. Contrary to the Attorney General's argument, the court said that nothing in Article III, § 21 of the Maryland Constitution [5] vested discretion in the Committee to close its meetings when it believed that its business should be kept secret. The court entered a declaratory judgment as follows: "A Budget Conference Committee is a public body whose meetings are required by the provisions of Article 76A to be open to the public." [6]

The Attorney General, on behalf of the Committee and its members, appealed to the Court of Special Appeals. We granted certiorari prior to decision by the intermediate appellate court to consider the important public issues raised in the case.

In seeking a reversal of the lower court's declaratory judgment, the Attorney General posits five arguments. First, he maintains that a Conference Committee is not a "public body" within the meaning of § 8 (g) of the Act because, unlike Standing Committees of the General Assembly, it is not "created" by the Maryland Constitution, by statute or by rule, but is only "authorized" by rule of both Houses. We think the argument is a specious one. Conference Committees are established and exist only in pursuance of House and Senate Rules and in the sense contemplated by § 8 (g) are plainly the creation of a rule.

As we observed in *City of New Carrollton v. Rogers,* 287 Md. 56, 410 A.2d 1070 (1980), the heart of the Act is found in the public policy declaration of § 7, *i.e.,* that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials [when exercising legislative, quasi-legislative or advisory functions] and the deliberations and decisions that go into the making of public policy." That commitment is secured by the provisions of §§ 10 and 12 of the Act which afford the public a right to observe the

---

5. Article III, Sec. 21 provides: "The doors of each House, and of the Committee of the Whole, shall be open, except when the business is such as ought to be kept secret."

6. The court declined to award counsel fees to the plaintiff.

deliberative process and the making of decisions by the public body at open meetings. *Id.* at 71-72. To conclude that a Conference Committee is not within the ambit of the § 8 (g) definition of a "public body" would be to ascribe an intention to the legislature to exclude from the Act's coverage all those entities which, although lawfully transacting public business and exercising legislative or advisory functions, were nevertheless merely authorized but not required by law to exist. Obviously, the adoption of such a strained construction would seriously undercut the Act's effectiveness and would be wholly at odds with the broad public policy underlying its passage.

The Attorney General next argues that if the Conference Committee was a public body subject to the Act's provisions, its meetings were nevertheless properly closed to the public for compelling reasons sanctioned by § 11 (a) (13), and the lower court erred in ruling to the contrary. The record discloses that the Committee was advised by an opinion of the Attorney General prior to its first meeting on April 2, 1981 that (1) it was not a public body under § 8 (g) and need not open its meetings to the public and (2) if it was a public body within the Act's coverage, it could close its meetings because the Committee's only purpose was "to achieve compromise and consensus, [and it] could invoke the need for free and open discussion and deliberation as a compelling reason to close a meeting pursuant to § 11 (a) (13)." The record does not reveal which of these reasons, if either, the Committee invoked in closing its meetings, nor does it indicate that the reason given by Senator Levitan for closing the meeting represented the official position of the Committee or was merely the personal view of one of the Committee's six conferees. The state of the record does not therefore permit a determination whether the Committee closed its meetings with reliance upon § 11 (a) (13). While we think the lower court reached the correct result in concluding that the provisions of § 11 (a) (13) did not justify closure of the Committee's

meetings, it was not because the evidence was insufficient to demonstrate compliance with those provisions, but rather because no evidence at all was adduced of reliance upon that section.

It is next contended that if the Conference Committee is a public body under the Act, and its meetings were not properly closed under § 11 (a) (13), the lower court nevertheless lacked jurisdiction to issue a declaratory judgment because civil enforcement of the Act's provisions is expressly precluded by § 14 (g) when the meeting of the public body under scrutiny involves "an action appropriating public funds." As previously indicated, § 14 provides for civil enforcement of the Act's provisions and authorizes injunctive, declaratory or other "appropriate" relief to require compliance with the Act, to determine its applicability, or to void actions of a public body taken in violation of the Act's open meeting requirements. None of these remedies, however, is available, according to the express language of § 14 (g), "to an action appropriating public funds." Of course, the action taken by the Budget Conference Committee at its meetings, culminating in the filing of its nonamendable report with the General Assembly, together with the recommended form of the Budget Bill, was not itself an appropriation of public funds, any more than actions taken by Standing Committees of the Senate and House with reference to budgetary matters constitute an appropriation of public funds. The action of the Conference Committee was, however, a vital part of the process of enacting the Budget Bill; its report contained recommendations as to the final form of the Budget Bill and was voted upon by the General Assembly in the form presented by the Conference Committee. The action of the Conference Committee was thus an essential step in the process of enacting the Budget Bill and appropriating the public funds necessary to operate the state government. Indeed, the provisions of the Act apply "not only to final decisions made by the

public body exercising legislative functions at a public meeting, but as well to all deliberations which precede the actual legislative act or decision, unless authorized by § 11 to be closed to the public." *City of New Carrollton, supra,* 287 Md. at 72. We think, therefore, that the phrase in § 14 (g) — "an action appropriating public funds" — encompasses the deliberations of the Budget Conference Committee in the process of enacting the Budget Bill into law. In insulating actions taken by a public body in matters associated with the appropriation of public funds from the judicial remedies provided in § 14, the legislature undoubtedly intended to maintain the integrity of any appropriation measure, even if the disputed action was taken in violation of the open meetings provision of the Act. This is plainly a public policy determination wholly within the domain of the legislature to make.

The *Baltimore News American* suggests that § 14 (g) does not inhibit the filing of an action under the Declaratory Judgments Act to obtain a declaration of rights since § 14 (h) provides that the application of "other available remedies" is not precluded by § 14. We think it clear, however, that the authorization to obtain declaratory relief contained in § 14 (a) of the Act is expressly made inapplicable to cases, as here, coming within the ambit of § 14 (g). Consequently, the declaratory judgment remedy is not "available" under § 14 (h) in this case, whether brought under the provisions of § 14 (a) or under the Declaratory Judgments Act. Accordingly, although we agree that the Act requires that Conference Committee meetings be open to the public unless closed in accordance with the provisions of § 11, the lower court did not, in view of the provisions of § 14

(g), have jurisdiction to enter a declaratory judgment in this case.[7]

> *Case remanded to the Circuit Court for Anne Arundel County with directions that it vacate the declaratory judgment and dismiss the action.*
> *Costs to be paid by the appellee.*

---

**7.** Courts consistently adhere to a policy of not deciding constitutional issues unnecessarily. *See* Simms v. State, 288 Md. 712, 725, 421 A.2d 957 (1980). Consequently, in view of our disposition of this case, we do not consider the Attorney General's argument that the Speech and Debate Clauses of the Maryland Constitution and Declaration of Rights render the provisions of the Act inapplicable to members of the Legislature. Nor do we reach the question whether, notwithstanding the Act's provisions, Article III, §§ 19 and 21 of the Maryland Constitution and Article 8 of the Declaration of Rights vest unreviewable discretion in members of the General Assembly to close committee meetings.