BOARD OF COUNTY COMMISSIONERS OF CARROLL
COUNTY *v.* LANDMARK COMMUNITY NEWS-
PAPERS OF MARYLAND, INC. ET AL.

[No. 162, September Term, 1981.]

*Decided June 9, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Charles W. Thompson, Jr., County Attorney,* for appellant.

*John T. Willis,* with whom were *Willis & Burk* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

In this case we are faced with yet another application of Maryland's second "sunshine" law embodied in Maryland Code (1957, 1980 Repl. Vol.) Art. 76A, §§ 7-15 (the Act) as enacted by Ch. 863 of the Acts of 1977.[1] The Act is contained in a subtitle captioned "Meetings of Public Bodies."

Appellees, Landmark Community Newspapers of Maryland, Inc., and Gerald R. Fischman (Landmark), sued the members of the Board of County Commissioners of Carroll County. They sought a declaratory judgment to the effect that meetings of the County Commissioners styled as "work sessions" or "executive sessions," which are not open to the public and during which the budget for Carroll County was in the process of preparation, violated the Act. Reference was made to three specific meetings held for the purpose of "discuss[ing] the proposed budget for Carroll County for the fiscal year July 1, 1981 to June 30, 1982."[2]

---

1. A second and older "sunshine" law is among the Maryland statutes. That which is applicable to counties is contained in Maryland Code (1957) Art. 25, § 5. It provides:

"All meetings, regular and special, of the board of county commissioners or of the county council of any county in this State, shall be public meetings and open to the public at all times. Nothing contained herein shall be construed to prevent any such board or council from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session."

That statute was enacted by Ch. 13 of the Acts of 1954. The same chapter enacted similar provisions relative to municipalities and to agencies "of the Executive Department in the Government of Maryland," now codified in Code (1957) Art. 23A, § 8 and Code (1957) Art. 41, § 14, respectively. We are not asked in this litigation to apply the provisions of the earlier "sunshine" law.

2. Interestingly enough, both parties in their statements of facts refer to the *four* closed meetings which the County held on March 16, 17, 18, and

The point was made that no notice of those meetings was given to the public as required by Art. 76A, § 12 and that Fischman was not allowed to attend the meetings. The County Commissioners of Carroll County, as an entity, filed a counterclaim asking for a declaration that under a resolution of the County they were "acting in an 'executive function' " as that term is defined in the Act "until such time as a proposed budget [was] submitted to the Clerk to the County Commissioners of Carroll County as required by [that] [r]esolution," after which time they would be performing a "quasi-legislative function" in considering the budget as that term is defined in the Act. The County sought a further declaration that its "review sessions," during which the proposed budget was formulated, did not constitute "meetings" for the purposes of the Act.

The matter was heard on the County's motion for summary judgment. The chancellor filed a memorandum decree in which he ruled against the County. He granted a permanent injunction "requir[ing] . . . all future meetings of the Defendants concerning the budget for Carroll County [to] be open to the public" and "that any minutes, tapes, or notes of any prior meetings held in violation of Article 76A be made available to the Plaintiffs for inspection and transcribing . . . ." The County then moved for reconsideration. It argued, among other things, that this case involved the appropriation of public funds and, thus, under § 14 (g) of the Act the trial court was deprived of jurisdiction. The trial judge again ruled against the County. An appeal to the Court of Special Appeals followed. We granted the County's request that we issue the writ of certiorari and consider the case prior to a determination by the intermediate appellate court. Since we regard this case as controlled by *Avara v. Baltimore News American,* 292 Md. 543, 440 A.2d 368 (1982), we shall reverse.

19, 1981. However, in the memorandum decree dated October 29, 1981, and in both the original and the amended bills of complaint, reference is made to the *three* closed meetings of March 16, 17, and 18, 1981.

# I

The public policy embodied in the Act is stated in § 7:

"It is essential to the maintenance of a democratic society that except in special and appropriate circumstances public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy."

The various terms used in the Act are defined in § 8. Relevant here are those definitions concerning executive and quasi-legislative functions and the meaning of the word "meeting." An executive function is said in § 8 (c) to mean "the administration or application by a public body of the laws of the State or a political subdivision of the State, or of the rules, regulations, or bylaws of a public body." This term does not include, however, any action defined as advisory, legislative, quasi-legislative, judicial, or quasi-judicial. That portion of the definition of a quasi-legislative function here relevant is set forth in § 8 (i) (2). Such a function refers to "[t]he approval, disapproval, or amendment of a contract or a budget by a public body, or the process of doing so." A meeting is defined in § 8 (f) as "the convening of a quorum of the constituent membership of a public body for the purpose of considering or transacting public business." Section 8(f) states specifically that a meeting does not include "chance encounters, social gatherings, or other occasions which are not designed or intended for the purpose of circumventing the provisions of th[e] subtitle [pertaining to meetings of public bodies]." It is conceded that a board of county commissioners is a public body since § 8 (g) defines that term as including, among other things, "an entity consisting of two or more persons that is created by the State Constitution [or] by State statute . . . ."

By the terms of § 9 the Act is applicable to a public body "when it is exercising legislative, quasi-legislative or

advisory functions." The Act is not applicable to a public body "when exercising executive, judicial or quasi-judicial functions . . . ." Subject to the provisions of § 9, § 10 specifies that the meetings of every public body shall be open to the public unless closed in accordance with § 11.

Procedures for closing meetings for certain specified purposes are set forth in § 11. There is no contention here that any valid attempt under § 11 had been made to close the meetings in question. Accordingly, we have no need to refer to the details of § 11. Section 12, "[s]ubject to the provisions of § 9," indicates that "every public body shall give reasonable advance notice of its open meetings" as well as notice of closed sessions as provided in § 11 (b) (2).

Section 13 requires the keeping of written minutes by every public body covered under § 9, with those minutes being "prepared as soon as practicable under the circumstances." The minutes must be "open to public inspection during ordinary business hours." Section 13 further specifies that "notwithstanding the provisions of Article 76A, minutes of a meeting lawfully held in closed session may not be open to public inspection if that would frustrate the purpose for having the closed session."

Enforcement provisions are contained in § 14. Section 14 (a) authorizes any person adversely affected by an action in violation of § 10 or § 12 to file suit in the circuit court having proper venue for the purpose of "requiring compliance with the provisions of these sections, determining the applicability of these sections, or voiding the action." However, pursuant to the provisions of § 14 (b), such an action must be filed within forty-five days after the next public meeting or session following the "alleged improper closed meeting or session" under § 10, at which notice of the action taken or decision made at the closed meeting or session is given in accordance with § 11 (b). If a violation of § 12 is alleged, then the suit must be filed within forty-five days after the public meeting for which notice was not properly given. Section 14 (g) specifically states that § 14, which contains the enforcement provisions, "does not apply to an action appropriating public funds, levying taxes, or

providing for the issuance of bonds, notes or other evidences of public obligation."

It would appear at this time that each of the fifty states has some form of an open meetings statute. Our statute seems to be unique in that we have found no other having a per se exemption for executive functions. Relative to such statutes, see the discussion and the cases collected and analyzed in 56 Am. Jur. 2d *Municipal Corporations* § 161 (1971); Annot., 38 A.L.R.3d 1070 (1971); and the supplements to each.

The Maryland statute was first discussed by Chief Judge Murphy for this Court in *City of New Carrollton v. Rogers,* 287 Md. 56, 410 A.2d 1070 (1980). Although the subject of that litigation is in no way relevant to the issue currently before the Court, it is important to bear in mind that the Court there said:

"While the Act does not afford the public any right to participate in the meetings, it does assure the public right to observe the deliberative process and the making of decisions by the public body at open meetings. In this regard, it is clear that the Act applies, not only to final decisions made by the public body exercising legislative functions at a public meeting, but as well to all deliberations which precede the actual legislative act or decision, unless authorized by § 11 to be closed to the public. The Act makes no distinction between formal and informal meetings of the public body; it simply covers all meetings at which a quorum of the constituent membership of the public body is convened 'for the purpose of considering or transacting public business.' § 8 (f). It is, therefore, the deliberative and decision-making process in its entirety which must be conducted in meetings open to the public since every step of the process, including the final decision itself, constitutes the consideration or transaction of public business." 287 Md. at 72.

## II

The County first argues that the preparation of a budget is an executive function of county government different from the process of approval, disapproval, or amendment of a budget which the Act classifies as a quasi-legislative function.

In *County Comm'rs v. County Comm'rs,* 50 Md. 245 (1879), Judge Alvey observed for the Court:

> "A county is one of the public territorial divisions of the State, created and organized for public political purposes, connected with the administration of the State government, and especially charged with the superintendence and administration of the local affairs of the community; and being in its nature and object a municipal organization, the Legislature may, unless restrained by the Constitution, or some one or more of those fundamental maxims of right and justice with respect to which all governments and society are supposed to be organized, exercise control over the county agencies, and require such public duties and functions to be performed by them, as fall within the general scope and objects of the municipal organization." *Id.* at 259.

More recently, in *Centreville v. Queen Anne's County,* 199 Md. 652, 87 A.2d 599 (1952), Judge Delaplaine said for the Court:

> "Counties are created for the purpose of carrying out the policy of the State for the administration of matters of political government, including taxation, education, improvement of roads, and care of the poor, and for the administration of justice. The powers and functions of the county, as distinguished from municipal corporations, have a direct reference to the general, rather than the local, policy of the government of the State. Municipal corpo-

rations are created principally for the advantage and convenience of the people of the locality. The powers of the counties under the general law of the State do not include the police power." 199 Md. at 655.

In *County Council v. Supervisor,* 274 Md. 116, 332 A.2d 897 (1975), we said:

"County Commissioners in non-chartered counties 'are declared to be a corporation' by Code (1957, 1973 Repl. Vol.) Art. 25, § 1. They have been such at least since the passage of Chapter 411 of the Acts of 1874. 'Historically, County Commissioners are outgrowths of the old levy courts (originally established by Ch. 53 of the Laws of 1794), which were composed of the justices of the peace of the several counties' and '[t]heir duties were to meet and determine the necessary expenses of their counties and to impose an assessment or rate on property to defray county expenses.' 'The name "County Commissioners" was first constitutionally recognized in the Constitution of 1851,' *City of Bowie v. County Comm'rs,* 258 Md. 454, 461, 267 A. 2d 172 (1970), and *Cox v. Anne Arundel County,* 181 Md. 428, 433-34, 31 A. 2d 179 (1943). Moreover, '[u]nder our law County Commissioners are corporations, they act not as individuals but in their corporate entity. *Clark v. Harford Agricultural & Breeders' Asso.,* 118 Md. 608 [, 617, 85 A. 503 (1912)].' *Jay v. Co. Comm'rs Harford,* 120 Md. 49, 52, 87 A. 521 (1913)." 274 Md. at 120-21.

Additionally, we have recognized that in those home rule counties where the charter makes no provision for a county executive, the county council discharges both executive and legislative functions. *Wicomico County v. Todd,* 256 Md. 459, 464-65, 260 A.2d 328 (1970), and *Scull v. Montgomery Citizens,* 249 Md. 271, 281-82, 239 A.2d 92 (1968).

The executive function argument of the County is based

upon its Resolution 32-75, which was passed in 1975. That resolution, which supplanted an earlier one, provides for the creation of "the Office of County Budget Officer." Furthermore, it comprehensively provides for the formulation of the capital and current expense budgets of the County. Relative to the capital budget, § 2.06 of the resolution states:

> "The County Commissioners with the assistance of the Budget Officer shall consider such recommendations [from various county agencies] with the other budget proposals and shall prepare together with the current expense budget, a complete capital budget and capital program. The County Commissioners may amend the budget proposals and shall cause to be prepared the county budget as set forth along with a Budget Message."

Under § 2.07, "the County Commissioners shall announce the proposed tentative county budget for the ensuing fiscal year for public review and discussion" not later than sixty days prior to the end of the fiscal year. Section 2.08 sets forth that information which is to appear in the current expense budget, including "a comparative statement of the receipts and expenditures for the last completed fiscal year, the estimated receipts and expenditures of the currently ending fiscal year, and the expenditures recommended by the County Commissioners for the ensuing fiscal year for each program or project which shall be classified by agency . . . ." Section 2.10 pertains to the contents of the budget message. Section 2.11 states that the proposed budget shall be filed with the Clerk to the County Commissioners. Thereafter, a copy is to be supplied to the county library and to each newspaper of general circulation in the county. Provision then is made in § 2.12 for public hearings. Section 2.13 says in relevant part:

> "After the public hearing specified in the preceding section, the County Commissioners may decrease, increase, or delete any items in the budget except those required by the public general laws of this

State and except any provisions for debt service on obligations then outstanding or for estimated cash deficits. The adoption of the budget shall be by an affirmative vote of the County Commissioners on an ordinance to be known as the Annual Budget and Appropriation Ordinance of Carroll County."

Section 2.14 (c) states that when the budget has "been finally adopted in the Annual Budget and Appropriation Ordinance, the County Commissioners shall thereupon levy and cause to be raised the amount of taxes required by the budget in the manner provided by law so that the budget shall be balanced as to revenues and expenditures."

This budgetary procedure was authorized by Ch. 744 of the Acts of 1971, now codified as Code of Public Local Laws Art. 7 (1976 ed.), § 3-62. Among other things, it authorizes the County Commissioners of Carroll County to "[d]esignate a county employee or officer as County Budget Officer responsible for assisting the County Commissioners in the preparation and administration of county budgets."

Although Landmark dubs such arguments as "callous wordplay" designed to evade the purposes of the Act, the County maintains that the actual preparation of a budget is an executive function. The County claims that the quasi-legislative function does not begin until after the filing of the budget with the Clerk to the County Commissioners. The required hearings, revisions, and final approval then follow. Much is to be said for the County's argument that the acts here under review are part of an executive function. If it is correct in this contention, then these sessions are indeed exempt from the open meeting requirements of the Act. However, this is an issue we are not obliged to decide in light of our holding in part III.

III

Chief Judge Murphy opened the opinion in *Avara,* 292 Md. 543, by stating:

"The primary issue in this case is whether a Conference Committee of the Maryland General Assembly appointed to resolve differences between the two Houses arising over enactment of the Fiscal Year 1982 Budget Bill (H.B. 620) violated the provisions of Maryland Code (1957, 1980 Repl. Vol.), Article 76A, §§ 7-15 (the Act), by excluding the public from its working sessions." *Id.* at 544-45.

We said in *Avara:*

"As previously indicated, § 14 provides for civil enforcement of the Act's provisions and authorizes injunctive, declaratory or other 'appropriate' relief to require compliance with the Act, to determine its applicability, or to void actions of a public body taken in violation of the Act's open meeting requirements. None of these remedies, however, is available, according to the express language of § 14(g), 'to an action appropriating public funds.' Of course, the action taken by the Budget Conference Committee at its meetings, culminating in the filing of its nonamendable report with the General Assembly; together with the recommended form of the Budget Bill, was not itself an appropriation of public funds, any more than actions taken by Standing Committees of the Senate and House with reference to budgetary matters constitute an appropriation of public funds. The action of the Conference Committee was, however, a vital part of the process of enacting the Budget Bill; its report contained recommendations as to the final form of the Budget Bill and was voted upon by the General Assembly in the form presented by the Conference Committee. The action of the Conference Committee was thus an essential step in the process of enacting the Budget Bill and appropriating the public funds necessary to operate the state government. Indeed, the provisions of the Act apply 'not only to final decisions made by the public body

exercising legislative functions at a public meeting, but as well to all deliberations which precede the actual legislative act or decision, unless authorized by § 11 to be closed to the public.' *City of New Carrollton, supra,* 287 Md. at 72. We think, therefore, that the phrase in § 14 (g) — 'an action appropriating public funds' — encompasses the deliberations of the Budget Conference Committee in the process of enacting the Budget Bill into law. In insulating actions taken by a public body in matters associated with the appropriation of public funds from the judicial remedies provided in § 14, the legislature undoubtedly intended to maintain the integrity of any appropriation measure, even if the disputed action was taken in violation of the open meetings provision of the Act. This is plainly a public policy determination wholly within the domain of the legislature to make." *Id.* at 552-53.

We regard *Avara* as controlling here. The actions of the County Commissioners of Carroll County here under consideration constitute just as essential a step in the process of the enactment of the County's budget and the appropriation of public funds necessary to operate the county government as was the action of the Budget Conference Committee before us in *Avara.* The entire budgetary process can be said to be an integrated one, each part of which is "essential" to the final product and to the enactment of the budget into law. In county government, dependent to a large degree upon the tax on real property for revenues, the budgetary process certainly is an essential step to the levying of taxes. The need to maintain the integrity of appropriations and tax levies is as necessary at the county level as at the State level.

*Judgment reversed; appellees to pay the costs.*