Dear Susan G. Phelps
In connection with the ongoing code revision process, you have requested our opinion whether three statutory provisions enacted in 1954 that require certain public entities to hold meetings in public may be repealed, in light of the more recent enactment of the Open Meetings Act, without effecting a substantive change in the law.
In our opinion, the older statutory provisions are, in large part, duplicative of the Open Meetings Act and may be repealed as part of code revision without effecting a substantive change in the law. However, the part of each provision that states that "no ordinance, resolution, rule or regulation shall be finally adopted at [a meeting not open to the public]" should be retained in the Code.
 I Statutory Background
A. 1954 Legislation
Fifty-five years ago, the General Assembly enacted parallel statutes requiring that meetings of certain State and local entities be open to the public. Chapter 13, Laws of Maryland 1954, nowcodified at Annotated Code of Maryland, Article 23A, § 8 (of municipal legislative bodies), Article 25, § 5 (county commissioners and county councils), and Article 41, § 1-205 (boards or commissions *Page 162 
in units of the Executive Branch).[1] The identical requirement in each of the statutes is identically qualified: these provisions are not to be construed to prevent a public body from holding a closed *Page 163 
executive session, as long as "no ordinance, resolution, rule or regulation [is] finally adopted at such an executive session."Id.
The term "meeting" is not defined in any of these statutes. Thus, it is to be understood as reflecting its common law meaning: the convening of a quorum of the body's membership — usually a simple majority — which is the minimum number necessary for a deliberative body to act. See Floyd v. Mayor and City Council ofBaltimore, 407 Md. 461, 482, 966 A.2d 900 (2009); 73 Opinions of the Attorney General 6, 7 n. 2 (1988). The term "executive session" is also undefined, but it presumably refers to the closure of all or part of a meeting. See Schwing, Open MeetingLaws § 7.4.A (1994). Thus, as long as certain final actions are not taken out of public view, these statutes allow for meetings to be closed to the public. The statutes do not prescribe any procedural requirements governing meetings of public bodies or the closure of such meetings. Nor do they provide any penalty for a violation of the open meetings requirement.
B. Open Meetings Act
In 1977, the General Assembly enacted the Open Meetings Act, which has been described by the Court of Appeals as "Maryland's first comprehensive legislation regarding open meetings." City ofBaltimore Dev. Corp. v. Carmel Realty Assoc.,395 Md. 299, 320, 910 A.2d 406 (2006). The Act, as amended, is now codified at Annotated Code of Maryland, State Government Article ("SG"), § 10-501, et seq. The Act embodies the legislative policy in favor of open meetings. Among other things, it requires, "[e]xcept as otherwise expressly provided in [the Act]," that a public body meet in open session, and grants the public the right to attend open meetings. SG §§ 10-501, 10-505, and 10-507(a).
The Act applies to "public bodies." The definition of a "public body" consists of two prongs.[2] First, the term "public body" *Page 164 
includes any multi-member entity created at the State or local government level by certain legal instruments, such as a statute, ordinance, or executive order. SG § 10-502(h)(1). Second, the term includes entities appointed by the Governor or the chief executive of a political subdivision — or by an official who is subject to the policy direction of the Governor or a chief executive — if the entity includes at least two individuals not employed by the State or the political subdivision. SG § 10-502(h)(2); City of BaltimoreDev. Corp. v. Carmel Realty Assoc., 395 Md. at 323. A "meeting" occurs when a quorum of a public body convenes for the consideration or transaction of public business. SG § 10-502(g). *Page 165 
Not every meeting of a public body, however, must be open. The Act does not apply when the public body is engaged in an administrative, [3] judicial, [4] or quasi-judicial function, [5]
as defined in the statute. SG §§ 10-502(b), (e), and (i) and 10-503(a).[6] In contrast, the Open Meetings Act does apply whenever a public body is engaged in an advisory, legislative, or quasi-legislative function, as each of these terms are defined in the Act. See SG § 10-502(c), (f), and (j).[7] However, even meetings governed by the Act can be closed to the public under 14 enumerated exceptions to the open meeting requirement. SG § 10-508(a).
The Act imposes certain procedural requirements to ensure that the public may benefit from the mandate for open meetings. *Page 166 
Reasonable advance notice must be given of a meeting. SG § 10-506. Minutes must be kept and made available to the public subsequent to a meeting. SG § 10-509.[8] And, when meetings governed by the Act are closed to the public, additional procedures must be followed.[9] When there is a conflict between the Open Meetings Act and other law relating to meetings of a public body, the "more stringent" law governs. SG § 10-504. Although the term "more stringent" is not defined, the policy underlying the Act is furthered only if the term is understood to mean the law granting the public greater access. City of College Park v. Cotter,309 Md. 573, 596-97, 525 A.2d 1059 (1987) (Eldridge, J., dissenting).[10]
Finally, the Act created the Open Meetings Compliance Board as an independent panel that issues advisory opinions interpreting the Act, and provided for private civil actions to enforce its requirements, including the award of attorney fees to a prevailing party. SG §§ 10-502.1 — 10-502.6 and § 10-510.[11] *Page 167 
 II Analysis
You have requested this opinion in connection with the ongoing code revision process. As a general rule, code revision is presumed to be for the purpose of clarity rather than for the purpose of changing the substance of statutory law. Comptroller v.Blanton, 390 Md. 528, 538, 890 A.2d 279 (2006). Thus, you have asked whether the open meetings statutes enacted as part of the 1954 legislation may be repealed without effecting a substantive change in the law, in light of the later enacted Open Meetings Act.
Your inquiry thus requires that we construe and compare the 1954 legislation and the Open Meetings Act. We consider the relationship between the 1954 legislation and the Open Meetings Act in four steps.
First, we consider the scope of each statute in terms of the entities to which each applies: are there public bodies to which the 1954 legislation, but not the Open Meetings Act, might apply?
Second, we consider whether the functional exclusions from the Open Meetings Act create a distinction from the 1954 legislation: does the 1954 legislation have an open meetings requirement for meetings outside the scope of the Act?
Third, we consider the circumstances under which each statute allows a public body to close a meeting: does the 1954 legislation require a meeting to be open when the Open Meetings Act would allow for a closed meeting?
Finally, we consider the extent to which either statute requires a public body to hold a meeting to take specific action.
A. Scope — Entities Covered
Article 23A, § 8 applies to the legislative body of a municipal corporation. As used in Article 23A, the term "municipal corporation" is understood to include all incorporated cities, towns, *Page 168 
and villages governed under Article XI-E of the Constitution.Cf. Maryland-Nat'l Capital Park and Planning Comm'n v. Town ofWashington Grove,408 Md. 37, 57, 968 A.2d 552 (2009) (municipalities derive authority from Article XI-E of the Constitution and Article 23A of the Code).[12] By its express terms, Article 23A, § 8 also applies to the Baltimore City Council.[13]
Article 25, § 5 applies to the governing body of each county, whether the county operates under a traditional commission government, charter home rule in accordance with Article XI-A of the Constitution, or code home rule in accordance with Article XI-F of the Constitution.
The application of Article 41, § 1-205 to boards and commissions "in control of" any unit of the "Executive Department" in State government is less clear. The term "executive department" is frequently used to refer to those units that are part of the Governor's office for budgetary purposes. See Letter of Advice from Assistant Attorney General Robert A. Zarnoch to theHonorable Charles J. Ryan (March 14, 1989). However, in this context, it is more appropriately interpreted as meaning the Executive Branch of State government — the meaning of the term in *Page 169 
1954.[14] Boards and commissions are generally created by statute or the State Constitution, and sometimes by executive order.
The Open Meetings Act applies to the Baltimore City Council, the county council of a county that has adopted charter home rule, the board of county commissioners of a traditional commission county or of a code county, and a legislative body of a municipal corporation in that each of these entities would qualify as a "public body" under SG § 10-502(h)(1).[15] The definition of "public body" under the Act would also extend to any board or commission governed by Article 41, § 1-205. Thus, all entities governed by the 1954 legislation are also "public bodies" subject to the Open Meetings Act. Repeal of the 1954 legislation would not reduce the universe of entities subject to an open meetings requirement.
B. Scope — Functions Covered
As noted above, not every meeting of a public body is necessarily governed by the Open Meetings Act. Certain *Page 170 
"functions" of a public body are excluded from the Act even if they involve gatherings that would otherwise qualify as a "meeting." SG § 10-503(a). In contrast, the 1954 legislation has no similar exclusions.
At first blush, it might appear that the 1954 legislation grants the public a broader right to access meetings of public bodies than the Open Meetings Act in that the 1954 legislation applies to "[a]ll meetings, regular or special" and lacks the functional exclusions of the Open Meetings Act. Nevertheless, the only real limitation under the 1954 statute on a public body's ability to conduct an executive session that is closed to the public is that it may not take final action in adopting an ordinance, resolution, rule, or regulation during the course of the closed session. Thus, subject to that caveat, the 1954 legislation also allows a public body to close those meetings that are excluded from the scope of the Open Meetings Act. And, as explained below, that caveat is very limited.
By definition, adoption of an ordinance would be a legislative function subject to the Open Meetings Act. SG § 10-502(f)(1). Adoption of a rule or regulation would be a quasi-legislative function also subject to the Act. SG § 10-502(j)(1). Under either scenario, the Open Meetings Act would apply not only to the public body's final action, but to the entire deliberative process conducted during the course of a meeting. City ofNew Carrollton v. Rogers, 287 Md. 56, 72, 410 A.2d 1070 (1980). To be sure, unlike the 1954 legislation, the Open Meetings Act does not expressly address the adoption of a resolution. However, it is clear that adoption of any resolution that "set[s] public policy" would be a legislative function under the Act. SG § 10-502(f)(1).[16] Similarly, any resolution approving an appointment, proposing a charter amendment, or approving a budget or contract would be governed by the Act. SG § 10-502(f)(2), (4) and (j)(2), (3). Thus, it appears that the authorization of closed executive sessions — and the limitation on closure — in the 1954 legislation are largely co-extensive with the *Page 171 
functional application of the openness requirements of the Open Meetings Act.
Nevertheless, we recognize that a limited class of "resolutions" might come within the definition of an administrative function, [17] and therefore would be outside the scope of the Act. SG § 10-503(a)(1)(i). Under those limited circumstances, the 1954 legislation would require an open meeting while the Open Meetings Act would not. Thus, to avoid a substantive change in the law, a code revision bill that otherwise repeals the 1954 legislation should retain at least the mandate that final adoption of a resolution occur in an open meeting.[18]
C. Exceptions to Open Meeting Requirements
We have thus determined the Open Meetings Act covers the same entities governed by the 1954 legislation and that, with a minor qualification, the application of the openness requirements are largely the same. We next consider whether the statutes differ as to the circumstances under which a meeting subject to the openness requirement may be closed and the procedure required.
As noted above, the 1954 legislation prescribed no procedural requirements for the closure of a meeting. Thus, the procedures required by the Open Meetings Act would govern closure of a meeting and repeal of the 1954 legislation would not affect these procedural requirements. *Page 172 
With respect to the circumstances under which a meeting may be closed, the Open Meetings Act has 14 enumerated exceptions to the openness requirement based on the subject matter under discussion; the 1954 legislation generally permits an entity to hold an "executive session," but does not further confine the body's discretion except to the extent that it is finally adopting an ordinance or other measure. However, the Court of Appeals has held that the exceptions set forth in SG § 10-508 also apply to the open meetings requirement of Article 23A, § 8, one of the parallel statutes enacted by the 1954 legislation. J.P.Delphey Ltd. P'ship v. Mayor and City of Frederick, 396 M d. 180, 199, 913 A.2d 28 (2006).[19] Specifically, the Court held that exceptions under SG § 10-508(a), authorizing a public body to close a meeting for enumerated purposes, "provide[] an exception to the general prohibitions of Section 8 of Article 23A."Id., 396 Md. at 202.[20] *Page 173 
D. Required Meetings
Finally, we consider the extent to which either statute prescribes when a public body must hold a meeting. The 1954 legislation requires that public bodies take certain actions in the context of an open meeting — i.e., "final adoption" of an ordinance, rule, regulation, or resolution. In that respect, then, the 1954 legislation imposes an obligation on a public body to hold a meeting in public.
By contrast, our longstanding advice has been that the Open Meetings Act does not specify when a public body must hold a meeting; it simply establishes rules that apply when a meeting occurs. 81 Opinions of the AttorneyGeneral 140, 141-44 (1996); Office of the Attorney General,Open Meetings Act Manual 6 (6th ed. 2006).[21]
Dictum in a recent Court of Appeals decision may raise a question whether the Open Meetings Act also requires a public body to hold a meeting for certain purposes, although that decision can likely be reconciled with our longstanding view of the statute. See *Page 174 Armstrong v. Mayor and City Council of Baltimore,409 Md. 648, 976 A.2d 349 (2009).[22] *Page 175 
In any event, the 1954 legislation clearly directs that certain actions be taken in an open meeting while it is not at all clear that the Open Meetings Act imposes the same, much less a co-extensive, requirement. In our view, repeal of the 1954 legislation would likely effect a substantive change if it eliminated this requirement.
E. Summary
The Open Meetings Act applies to each of the public bodies governed by the 1954 legislation. While the 1954 legislation does not have the functional exclusions that limit the scope of the Open Meetings Act, the earlier legislation allows a public body to close virtually any meeting that would be outside the scope of the Open Meetings Act — except for an entity enacting a "resolution" while performing an "administrative function." Moreover, the Court of Appeals has held that 14 exceptions to the open meetings requirement in the Act also apply to the open meetings requirements in the 1954 legislation. Thus, the open meeting requirements imposed by the Open Meetings Act equal or exceed those of the older legislation in virtually all circumstances. Finally, in our view, the prohibition on final adoption of an ordinance, resolution, rule, or regulation under the 1954 legislation bans such action outside the *Page 176 
course of a meeting — a matter not clearly addressed by the Open Meetings Act.
 III Conclusion
In our opinion, the statutory provisions enacted in 1954 are, in large part, duplicative of the Open Meetings Act. They may be repealed as part of code revision without effecting a substantive change in the law. However, the final clause of each provision that states that "no ordinance, resolution, rule or regulation shall be finally adopted at [a meeting not open to the public]" should be retained.
 Douglas F. Gansler Attorney General
 William R. Varga Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] Article 23A, § 8 reads:
 All meetings, regular and special, of the legislative body, by whatever name known, in every municipal corporation in Maryland, including the City of Baltimore, shall be public meetings and open to the public at all times. Nothing contained herein shall be construed to prevent any such body from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session.
Article 25, § 5 reads:
 All meetings, regular and special, of the board of county commissioners or of the county council in this State, shall be public meetings and open to the public at all times. Nothing contained herein shall be construed to prevent any such board or council from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session.
Article 41, § 1-205 reads:
 All meetings, regular and special, of the boards or commissions in control of any department, bureau or other agency of the Executive Department in the government of Maryland shall be public meetings and open to the public at all times. Nothing contained herein shall be construed to prevent any such board or commission from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session.
These provisions have not been substantively modified since their initial enactment.
[2] The statute reads:
 (1) "Public body" means an entity that:
 (i) consists of at least 2 individuals; and
 (ii) is created by:
 1. the Maryland Constitution;
 2. a State statute;
 3. a county or municipal charter;
 4. an ordinance;
 5. a rule, resolution, or bylaw;
 6. an executive order of the Governor; or
 7. an executive order of the chief executive authority of a political subdivision of the State.
 (2) "Public body" includes:
 (i) any multimember board, commission, or committee appointed by the Governor or the chief executive authority of a political subdivision of the State, or appointed by an official who is subject to the policy direction of the Governor or chief executive authority of the political subdivision, if the entity includes in its membership at least 2 individuals not employed by the State or the political subdivision; and
 (ii) the Maryland School for the Blind.
SG § 10-502(h)(1) and (2). SG § 10-508(h)(3) goes on to exclude certain entities from the definition of "public body" including, among other entities, the Governor's cabinet.
Effective October 1, 2009, the definition of "public body" will be further expanded to include multi-member entities informally appointed by an existing public body in the executive branch of State government, or by an official subject to its policy direction, if the resulting entity includes at least 2 individuals who are not members of the public body or employees of the State. See
Chapter 164, Laws of Maryland 2009.
[3] The determination of an administrative function can be complex in that it must involve the "administration" of an existing State or local law or a rule, regulation, or bylaw of a public body and may not involve any matter that would fall under any of the Act's other defined functions. See SG § 10-502(b).
[4] A judicial function would apply solely to the judicial branch of State government. SG § 10-502(e).
[5] A quasi-judicial function involves a contested case proceeding under the Administrative Procedures Act, a proceeding before an administrative agency for which Title 7, Chapter 200 of the Maryland Rules would govern judicial review, or the consideration of a complaint by the Open Meetings Compliance Board. SG § 10-502(i).
[6] The statute further qualifies these exclusions. Regardless of how a meeting is categorized, the Open Meetings Act applies whenever a public body meets to consider the granting of a license or permit or to consider a special exception, variance, conditional use, zoning classification, the enforcement of any zoning law or regulation, or any zoning matter. SG § 10-503(b). Furthermore, when a public body conducts a closed administrative function session as part of a meeting governed by the Act, certain subsequent disclosures are required. See SG § 10-503(c).
[7] The Open Meetings Compliance Board has interpreted the Open Meetings Act, as amended in 1991, to also apply when a quorum of a public body meets to consider public business in those rare situations in which none of the Act's defined functions appears to apply. See, e.g., 5 OMCB Opinions 60, 66 (2006); 1 OMCB Opinions 96, 98 (1994).
[8] Subject to limited exceptions, minutes of a meeting closed under the Act ordinarily remained sealed. SG § 10-509(c)(3)(ii) and (4).
[9] If it is anticipated that all or a part of a meeting will be closed, that information must be reflected in the notice of the meeting. SG § 10-506(b)(3). To close a meeting, the public body must vote publicly on the motion to close the meeting and the presiding officer must complete a written statement documenting the justification for the closed session-a document that is available to the public. SG § 10-508(d). Subsequent to the closed session, certain information relating to the closed session is to be made public as part of the publicly available minutes. SG § 10-509(c)(2).
[10] Of course, as the two judicial opinions in Cotter
illustrate, reasonable minds may differ as to which of two enactments is "more stringent."
[11] A judicial action may not be brought under the Open Meetings Act challenging a public body's action in appropriating public funds, levying a tax, or providing for the issuance of debt. SG § 10-510(a)(1); see, e.g., Avara v. Baltimore News Am.Div., 292 Md. 543, 552-53, 440 A.2d 368 (1982) (General Assembly budget conference committee subject to Open Meetings Act, but court lacked jurisdiction to issue declaratory judgment remedy); Bd ofCounty Comm'rs of Carroll County v. Landmark Cmty. Newspapers ofMaryland, Inc., 293 Md. 595, 446 A.2d 63 (1982) (court lacked jurisdiction in connection with county commissioners' work sessions involving preparation of county budget).
[12] Article 23A, § 9(a) defines "municipal corporation," in part, as "cities, towns and villages . . . which are subject to . . . Article XI-E . . ." This definition technically applies only to those provisions under the "Home Rule" subtitle, §§ 9-46, initially added to the Code by Chapter 423, Laws of Maryland 1955. See Hitchins v. Mayor and CityCouncil of Cumberland, 208 Md. 134, 139, 117 A.2d 854 (1955). However, Article 23A is captioned "Corporations — Municipal" and, subject to limited exceptions, the provisions of Article 23A are understood as limited to municipalities governed under Article XI-E of the Constitution. Cf. 90 Opinions of the AttorneyGeneral 24 (2005) (county is not a municipal corporation for purposes of Article XI-E).
[13] Although a municipal corporation, Baltimore City is governed as a charter county under Article XI-A of the Constitution rather than under Article XI-E. 90 Opinions of the AttorneyGeneral at 25 n. 2; see also Annotated Code of Maryland, Article 1, § 14(a) ("The word county shall be construed to include the City of Baltimore, unless such construction would be unreasonable"); SG § 1-101(b) ("County" means a county of the State and, unless expressly provided otherwise, Baltimore City").
[14] Former Article 41, § 15 described the Governor as "head of the Executive Department" and provided that the Governor "shall . . . have supervision and direction over the officers and agencies . . . assigned to the Executive Department." This provision was understood as a legislative implementation of Article II, § 1 of the Maryland Constitution which vests in the Governor "[t]he executive power of the State." 67 Opinions ofthe Attorney General 203, 207 n. 3 (1982). As part of the code revision process, the reference to the "Executive Department" in former Article 41, § 15 was replaced with a reference to the "Executive Branch of State Government." See Revisor's Note to SG § 3-302, Chapter 284, Laws of Maryland 1984 at p. 1116. We believe this term used in Article 41, § 1-205 should be given the same interpretation.
[15] Until recently, SG § 10-502(h)(1)(ii)3 referred solely to a "county charter," a drafting error that resulted from the revision of former Article 76, § 8(g) as part of the enactment of the State Government Article in 1984. However, the Open Meetings Act has always been understood as applicable to municipal corporations. The term was amended to refer to "a county or municipal charter" as part of Chapter 60, § 1, Laws of Maryland 2009, nonsubstantive corrective legislation which took effect April 14, 2009, to more accurately reflect the original reference to a "local charter," the language which appeared in the initial enactment of the Open Meetings Act.
[16] Before recodification of the Open Meetings Act as part of the State Government Article, there was no question that such a resolution was covered. See Article 76A, § 8(e) (1980 Rep. Vol.) The term resolution was deleted during the revision process "as unnecessary in light of the broad references to a law and `other measure to set public policy," see Revisor's Note to SG § 10-501(e), Chapter 284, Laws of Maryland 1984 at pp. 1332-33.
[17] In City of Bowie v. County Comm'rs for Prince George'sCounty, a case not involving the Open Meetings Act, the Court held that the County Commissioners were acting "executively or administratively" in adopting a resolution authorizing a sale of bonds pursuant to a State statute and thus, and the Commissioners were not subject to a public local law concerning open meetings. 258 Md. 454, 461, 267 A.2d 172 (1970). However, had the Open Meetings Act been in effect, a resolution approving the sale of bonds to a particular entity would be perceived as a contractual transaction subject to the Act. In fact, the "marketing of public securities" is one of the justifications under which a meeting subject to the Act may be closed. SG § 10-508(a)(6).
[18] This retention is reflected in our conclusion that language requiring that final action on an ordinance, resolution, rule, or regulation be taken during the course of a meeting be retained.See Part II.D and E, below.
[19] Other Open Meetings Act cases had acknowledged the 1954 legislation, but the Court of Appeals had not previously had an opportunity to reconcile that statute with the Open Meetings Act.See Bd. of County Comm'rs of Carroll County v. Landmark Cmty.Newspapers of Maryland, Inc.,293 Md. 595, 597 n. 1, 446 A.2d 63 (1982); City of College Park v.Cotter, 309 Md. 573, 576 n. 1, 525 A.2d 1059 (1987).
[20] In J.P. Delphey, the Court determined that the two statutes were in conflict in that Article 23A, § 8 "is very broad, prohibiting [a municipal governing body] from passing any rule, regulation, resolution or ordinance in any closed, executive session" while SG § 10-503(a)(3), authorizing a public body to close a meeting under the Open Meetings Act to consider the acquisition of real property, "is very specific, carving out an exception to Section 10-501's general mandate that all meetings of public bodies be kept open to the public. . . ." Id.,396 Md. at 198 (emphasis in original). The Court determined that the more specific provisions of the Open Meetings Act, allowing closure of meetings for enumerated purposes, created exceptions to the general prohibitions in Article 23A, § 8. 396 Md. at 199. This includes authority to act on matters in meetings closed pursuant to SG § 10-508(a) to the extent permissible under the Act. 396 Md. at 201.
The Court's conclusion is somewhat difficult to reconcile with SG § 10-504 (Open Meetings Act defers to "more stringent" law), as interpreted in City of College Park v. Cotter, in which the Court held that a provision in a municipal charter requiring all city council meetings to be open was a permissible expansion of the public's right to open meetings under the Open Meetings Act. 309 Md. 573, 525 A.2d 1059 (1987). In Cotter, the Court described the Open Meetings Act as "not exclusive in its application"; rather the Act "only outlines the minimum
requirements for conducting open meetings. . . . It does not supersede legislative enactments designed to bring more openness to public meetings." 309 Md. at 586 (emphasis in original). In J.P.Delphey, the Court did not address SG § 10-504 or theCotter decision. Nor did either party focus on SG § 10-504 in their briefs.
[21] Of course, other law apart from the Open Meetings Act might require that public business be addressed during the course of a meeting. See, e.g., Annotated Code of Maryland, Education Article, § 23-404(c)(2) (final action by library board of trustees must be taken at public meeting) and Economic Development Article, § 10-705(e)(2) (action by Venture Capital Trust Board of Trustees requires majority vote at meeting consisting of quorum).
[22] An extended review of the history of the Armstrong
case is necessary to understand the context for the Court of Appeals' cryptic reference to the Open Meetings Act. The case concerned the enactment of a Baltimore City ordinance authorizing a parking lot as a conditional use under the City's zoning code. The bill had been significantly amended by a Council committee without a committee hearing on the amendments. Opponents raised several challenges to the ordinance in the circuit court, including an argument that the ordinance had been enacted in violation of the Open Meetings Act. The circuit court held that the committee had violated the Open Meetings Act, inferring that the committee must have discussed amendments to the bill before approving them (or at least, should have discussed them) and held that such discussions should have been held in public. It rejected the City's argument that an open meeting was required only if a quorum of the committee discussed the matter simultaneously. However, the circuit court also held that the violation was "cured" as a result of the bill's subsequent enactment by the full Council.
On appeal, the Court of Special Appeals affirmed, in part, the circuit court decision in an unpublished decision. Armstrong v.Mayor and City Council of Baltimore
(Case No. 1243, September Term 2005 (filed July 2, 2007)). The intermediate appellate court quoted at length from the circuit court decision and stated that the committee had violated the Act, "by recommending an amendment to the bill without first allowing the public an opportunity to hear the reasoning behind the amendment." Slip op. at 9. The reasoning of the Court of Special Appeals, to the extent it adopted the circuit court opinion, thus appears to be contrary to the understanding that the Act does not create a substantive requirement for when a public body must hold a meeting. Of course, as an unreported decision, the opinion is not considered precedent or persuasive authority. Maryland Rule 1-104(a).
The Armstrong case ultimately reached the Court of Appeals, which determined that the Open Meetings Act issue had been rendered moot by subsequent legislation. Armstrong v. Mayor and CityCouncil of Baltimore, 409 Md. 648, 976 A.2d 349 (2009). However, in referring to the ordinance in question, the Court stated cryptically that the ordinance "later was found correctly to have been enacted in violation of the Maryland Open Meetings Act."409 Md. at 682 (emphasis added). Thus, although the Court of Appeals did not review the reasoning of the intermediate appellate court and this comment is dictum, it might be construed as an endorsement of the analysis of the circuit court quoted in the Court of Special Appeals' opinion.
It is possible to reconcile the Court of Appeals' statement with the longstanding view of this Office. In its opinion, the Court of Appeals recounted at some length the applicable City zoning code provisions relevant to the committee's actions,409 Md. at 655-57, including a provision that precludes substantive amendments to zoning legislation following a public hearing without an additional hearing, unless
"the amendment [is] made in Committee." When the committee adopted its amendments as part of its report to the full Council without holding a committee meeting, it could be said that the amendment was not made "in Committee." Thus, the requirement that the committee hold a meeting in order to amend such a bill could be traced to provisions of the City zoning code. Any meeting of the committee involving a zoning matter would have to have been conducted in accordance with the Open Meetings Act. See
SG § 10-503(b). *Page 177